IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID BRIAN RIGGS,

              Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

              Defendant.

Case No. 3:16-cv-01626-AC

OPINION AND ORDER

---

MERRILL SCHNEIDER
Schneider, Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
        Attorney for plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

LARS J. NELSON
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
          Of Attorneys for defendant

ACOSTA, Magistrate Judge:

David B. Riggs ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is affirmed.

### Procedural Background

Plaintiff applied for DIB on August 16, 2012, alleging disability as of July 1, 2009, due to pain in his left shoulder, right knee, right wrist, lower extremities, and back; as well as high blood pressure, diabetes, and depression. (Tr. 65, 67, 170.) His application was denied initially and upon reconsideration. (Tr. 65, 78.) A hearing convened on December 1, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 35-63.) On December 19, 2014, the ALJ issued a decision finding plaintiff not disabled. (Tr. 17-28.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-3.)

### Factual Background

Born on January 28, 1960, plaintiff was 49 years old on the alleged onset date of disability and 54 years old on the date of the hearing. (Tr. 35, 67.) Plaintiff attended school through the eighth grade. (Tr. 171.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant

Page 3 - OPINION AND ORDER

is not disabled. *Yuckert,* 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert,* 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert,* 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert,* 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19.) At step two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis of the left shoulder; tendinitis of the left shoulder; and obesity. *Id.*

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude

Page 4 - OPINION AND ORDER

substantial gainful activity. (Tr. 20.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's

medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual

functional capacity ("RFC"):

> [He can] perform light work . . . except he [can] lift and/or carry 20
> pounds frequently and 10 pounds occasionally. He can sit for six hours
> in an eight-hour workday. He can stand and/or walk for up to six hours
> in an eight-hour workday. His ability to push or pull, including the
> operation of hand or foot controls, was unlimited, except for the limitation
> as to lifting and/or carrying. He can frequently do overhead reaching with
> the left upper extremity. He can climb ramps or stairs frequently. He can
> occasionally climb ladders, ropes, or scaffolds. He can balance
> frequently. He can occasionally stoop, kneel, crouch, or crawl.

(Tr. 21.)

At step four, the ALJ found plaintiff was not capable of performing his past relevant work as a trim

press operator. (Tr. 21.) At step five, the ALJ found that plaintiff retained the capacity to perform the

following representative occupations: security guard, companion, and food assembler. (Tr. 27.)

Accordingly, the ALJ concluded instead that plaintiff was not disabled under the Act. (Tr. 27-28.)

*Discussion*

Plaintiff argues that: (1) the Appeals Council erroneously refused to make post-hearing evidence

part of the administrative record; (2) the ALJ erred by erroneously discrediting his symptom testimony; (3)

the ALJ erred by rejecting the opinion of examining physician Lisa Olson, D.O.; and (4) the ALJ erred by

failing to carry the burden of proof at step five.

I. New Evidence

As a threshold matter, Plaintiff argues that evidence submitted to the Appeals Council post-hearing

which was not integrated into the official administrative record should be considered by the is Court

because it was erroneously rejected by the Appeals Council.[2] Plaintiff's Opening Brief ("Pl.'s Br.") 14

(ECF No. 15). Plaintiff's argument fails. This Court has no jurisdiction to review the actions of the

Appeals Council. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

Plaintiff's contention that "[e]vidence submitted to the Appeals Council must be considered in determining

whether the Commissioner's decision is supported by substantial evidence is incomplete as a statement of

law. The Appeals Council will consider post-hearing evidence "only where it related to the period on or

before the date of the hearing decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162

n.3 (9th Cir. 2012). "If you submit evidence which does not relate to the period on or before the date of

the hearing decision, the Appeals Council will explain why it did not accept the additional evidence . . . ."

20 C.F.R. § 404.976(b)(1). Thus, only evidence which the Appeals Council deems relates to the

adjudicatory period must be "considered" in evaluating the record as a whole. Here, the Appeals Council

declined to "review" or "consider" the new evidence because it found the evidence was not material to the

relevant time period, and therefore also declined to incorporate it into the administrative record (in order

to determine if the record as a whole supported the non-disability decision). (Tr. 2.); *see* 20 C.F.R. §

404.981; *see also, Will v. Colvin*, No. 3:14-cv-00754-JE, 2016 WL 3450842, at *7-8 (D. Or. May 18,

2016). Because the evidence at issue was not made part of the administrative record as it was in *Brewes*,

it is not properly before the Court, and therefore the Court is not compelled to consider it.

Plaintiff further argues that the Court "could consider a physician's opinion, which was rejected by

---

[2] The Appeals Council indicated the evidence at issue is a February 11, 2015 medical source statement from a Dr. Brent Hoffman. (Tr. 2). However, because the report was not included in the official administrative record, it was not available to the Court for review.

the Appeals Council, to determine whether, in light of the record as a whole, the ALJ's decision was

supported by substantial evidence . . . ." Pl.'s Br. 14 (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54

(9th Cir. 1993). *Ramirez*, however, is inapposite. There, the Appeals Council declined to reverse the

ALJ's decision *after* reviewing the record as a whole, including the post-hearing evidence, which the

Appeals Council had made part of the record. *Ramirez*, 8 F.3d at 1451-52. In contrast, here the Appeals

Council determined the evidence was not material, stated its rationale, declined to "consider" or "review"

the evidence, and did not include it in the record. Accordingly, the evidence in question is not before the

Court in this matter, and plaintiff has not argued a valid recourse for appending the record.[3] As such,

Plaintiff's arguments pursuant to *Brewes* lack merit.

## II. Plaintiff's Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony

about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503

F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ

can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and

convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an

---

[3] Under "sentence six" of 42 U.S.C. § 405(g), the Court may remand a matter based on new evidence not entered into the administrative record by the Appeals Council where: (1) new evidence is not merely cumulative; (2) it is material; and (3) good cause is shown. Plaintiff does not argue the evidence in question should be included in the record pursuant to sentence six, and therefore this issue is waived. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (citation omitted).

ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Plaintiff testified that he is no longer able to work because of various pains in his left shoulder or neck, left arm, wrists, and lower back. (Tr. 40-41, 46-47, 56-58.) He stated that on a good day he can stand for three to four hours, but only for half an hour on a bad day. (Tr. 47-48.) Plaintiff further stated he was able to lift a gallon of milk with either hand, but that his arm strength would give out after several hours of repeated lifting. (Tr. 49-50., 55-56.) He explained that he was unsure if he would be able to climb a flight of stairs, and did not feel he could jog. (Tr. 58.) Plaintiff described difficulty grasping due to carpal tunnel syndrome in his right wrist. (Tr. 39-40.) He recounted performing some side jobs such as operating a weed-eater, but noted he would "pay for it in pain" later. (Tr. 38.) Plaintiff also testified that he cannot fully extend his right knee, which causes him to limp. (Tr. 45-46.) The ALJ found plaintiff's statements "concerning the intensity, persistence, and limiting effects" of his symptoms not entirely credible. (Tr. 22.)

One rationale the ALJ provided for finding plaintiff's symptom allegations not fully credible was that they contradicted his reported activities of daily living ("ADLs"). (Tr. 25.) Consideration of ADLs is a valid basis for discrediting symptom allegations in the Ninth Circuit. *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007). Plaintiff contends that the ALJ failed to explain how plaintiff's "modest daily activities" were inconsistent with his claimed limitations. Pl.'s Br. 13. The ALJ noted that plaintiff's activities were "not as limited as one would expect" given his allegations about disabling pain, as plaintiff stated that he lived alone, performed self-care without help, shopped in stores, drove, cared for his pet cats, performed household tasks, prepared meals, and tended to his yard. (Tr. 25.) The ALJ also found that plaintiff reported performing "side jobs," including weeding. (Tr. 25, 38.)

Contrary to plaintiff's contentions, the ALJ met his burden of proof by identifying activities which would generally be precluded if plaintiff's pain allegations were indeed as severe as he alleged. The ALJ specifically found that the record contradicted his allegations that pain in his left arm and shoulder, right knee, right wrist, and lower back precluded his ability to work. Although the ALJ did not specifically match plaintiff's allegations to specific ADLs in his narrative, there are obvious inferences to be drawn. For example, although plaintiff testified that he cannot lift items which weigh more than a few pounds, the allegation is contradicted by his ability to lift a gallon of milk with either hand. (Tr. 21, 49, 55.) Despite his allegation that pain prevents him from working at a strength level for light work, he testified that he was able to perform weed-eating services for pay during the adjudicatory period, and that he is able to perform yard-work at his home. (Tr. 25, 194.) Similarly, despite his contention that pain prevents him from concentrating adequately, plaintiff asserted he is able to manage his own finances, prepare his own meals, do his own laundry, and shop for food three times per week, and follow written instructions. (Tr. 194-96.) As such, although the ALJ's findings were not extensive regarding ADLs, the court finds that that ALJ adequately set forth some valid contradictions in the record; indeed, "[e]ven where [ADLs] suggest some level of functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

Page 9 - OPINION AND ORDER

contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1105, 1113 (9th Cir. 2012) (citation omitted).

Moreover, the ALJ identified other reasons for finding plaintiff's allegations about the severity and limiting effects of his pain not fully credible, including conservative treatment. Evidence of conservative treatment of symptoms undermines a plaintiff's allegations of disabling pain. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). For example, allegations of severe pain may be impugned if a claimant requires non-prescription medications to alleviate symptoms, or receives relief from minimal treatment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Here, the ALJ found that "claimant's medications do not indicate the presence of an impairment that was more limiting than found in this opinion." (Tr. 25.) The ALJ's finding was supported elsewhere in his decision, where he noted that, following claimant's 2013 car accident, his back pain reportedly improved with conservative measures, including chiropractic treatments twice weekly, icing and heating, and non-steroidal anti-inflammatory("NSAID") medication and a muscle relaxer. (Tr. 23, 337); *see Thomas v. Berryhill*, No. 3:16-cv-00800-HZ, 2017 WL 1073367, at *5 (D. Or. Mar. 21, 2017) (affirming ALJ's findings that "muscle relaxers" and "NSAIDs" may constitute conservative treatment). The ALJ also noted that in 2014, claimant indicated that his shoulder pain had been relieved by taking four Aleve tablets daily for five years, but lately was no longer as effective. (Tr. 23, 337.) Further, at the hearing, plaintiff testified that prior to August 2014, he took over-the-counter medications for pain. (Tr. 43.) Plaintiff argues that the ALJ's finding was faulty, because plaintiff "has been prescribed numerous pain medications for his impairments, which he takes regularly, with limited relief." Pl.'s Br. 13. In support, plaintiff cites the testimony already recited above, and records documenting prescription pain medications prescribed

immediately after his car accident in 2013. *Id.* However, as the ALJ noted, plaintiff subsequently improved with medication and limited treatment. As such, the ALJ reasonably found that plaintiff's conservative treatment regimen undermined his allegations of disabling pain since the alleged onset date of disability. Although plaintiff suggests an alternative interpretation of the record, the court is compelled to uphold the ALJ's finding because it was rational and is supported by substantial evidence in the record. *Batson*, 359 F.3d at 1197; *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

Finally, the ALJ discounted plaintiff's symptom allegations based on the objective record. In support, the ALJ noted that imaging studies reflected only minor findings regarding the left shoulder, lumbar spine, thoracic spine, and right knee. (Tr. 22, 320, 324, 355.) Although one interpretation of a September 9, 2013 MRI showed moderate mid-thoracic spondylosis, the treating physicians reviewing the imaging indicated there was "no evidence of acute fracture, dislocation, or disc herniation . . . . slight anterior wedging of T8 that appears chronic in nature . . . no spinal cord or nerve root compression. (Tr. 364.) ALJ noted that following plaintiff's August 2013 car accident, a November 2013 physical examination was "unremarkable." *Id.* Indeed, the doctors who examined plaintiff in November 2013 also reported that prior to the accident, plaintiff was "in his usual good health." (Tr. 22, 361.) The doctors further noted plaintiff was "asymptomatic" until the accident, and despite the MRI findings, indicated plaintiff was still able to carry up to 25 pounds at work. (Tr. 364.) The doctors noted that plaintiff was not a candidate for surgical intervention, and felt he would heal with conservative treatment. *Id.*

Plaintiff does not directly dispute the ALJ's finding regarding the inconsistency between the objective medical evidence and his allegations of disabling pain. *See* Pl.'s Br. 11-14; 4-5. Based on the analysis above, the court finds that the ALJ's finding was reasonable, and supported by substantial evidence

Page 11 - OPINION AND ORDER

in the record, which the ALJ specifically cited in his written decision. Accordingly, the ALJ's finding must

be affirmed. *Batson*, 359 F.3d at 1197; *Garrison*, 759 F.3d at 1010.

III.  Medical Opinion Evidence

Plaintiff argues the ALJ erroneously discounted the opinion of treating physician Dr. Olson, who

performed a one-time physical examination on December 20, 2012. (Tr. 306-12.) An ALJ is responsible

for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted

medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting

contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427

F.3d 1211, 1216 (9th Cir. 2005).  Nonetheless, treating or examining physicians are owed deference and

often will be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal

quotation omitted).  An ALJ can satisfy the substantial evidence requirement by setting out a detailed

summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v.*

*Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999).  However, "the ALJ must do more

than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the

doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted).  On this record, Dr. Olsons's

assessment was contradicted in part by the State agency medical examiners.  Accordingly, the ALJ's

reasons for rejecting the doctor's opinion must be specific and legitimate, and supported by substantial

evidence. *See Garrison*, 759 F.3d at 1012.

As the Commissioner accurately asserts, the only material difference between the opinions to which

the ALJ accorded great weight, the State Agency medical consultants, and diminished weight, Dr. Olson,

Page 12 - OPINION AND ORDER

is that the agency doctors found plaintiff could stand/walk for *six* hours in an eight-hour workday, rather

than *four*. Defendant's Br. 14 ("Def.'s Br.") (ECF No. 19); (Tr. 23-24, 73-75, 86-88, 311). Following

her examination of plaintiff, Dr. Olson opined that plaintiff was able to stand and/or walk only for *four* hours

in an eight-hour workday, "likely secondary to a herniated disc." (Tr. 311.) However, Dr. Olson indicated

she was unable to confirm the herniated disc diagnosis because she did not have an MRI to review. *Id.*

When the State Agency doctors reviewed imaging in January 2013, they indicated it did not show a

herniated disc, but rather "slight endplate sclerosis and small right-sided marginal osteophytes." (Tr. 71,

85, 320.) Further, although a later MRI was not reviewed by the doctors, it did not reflect that plaintiff had

a herniated disc in his thoracic spine. (Tr. 355-57.) Thus, the ALJ's finding was specific and legitimate,

and is supported by substantial evidence in the record.

The ALJ further found that Dr. Olson's examination notes were not consistent with her own

conclusions. In support, the ALJ noted that plaintiff demonstrated normal strength and sensation without

spasms or tenderness. (Tr. 24.) Although plaintiff argues that the ALJ "omitted" findings that were not

favorable to his disability claim, the argument is not persuasive because the ALJ included findings which

supported some limitations, including inability to do toe-heel walking, positive straight leg test, and pain in

the lower back radiating to the hips. *Id.* Plaintiff also argues that the ALJ erred in rejecting Dr. Olson's

opinion that he was limited by a disc herniation, stating that a 2013 x-ray revealed "worsening symptoms

and marked degenerative disc disease in his back." Pl.'s Br. 9-10; Pl.'s Reply 3-4 (ECF No. 20). As

discussed above, however, the disc herniation Dr. Olson hypothesized about was not later substantiated

by medical imaging. (Tr. 71, 85, 320.) Similarly, although marked degenerative changes were observed

in the back in 2013, they were observed in his cervical spine, rather than the lumbar spine, which Dr. Olson

had identified as the source of the pain. (Tr. 24, 310 ("the pain was located in his lower back").) As such, plaintiff's arguments are not persuasive.

The third reason offered by the ALJ for discounting Dr. Olson's opinion was that it did not comport to prior examinations; specifically, plaintiff previously demonstrated a normal gait. (Tr. 24.) Again, the ALJ's finding is supported by substantial evidence: numerous chart notes, both before and after Dr. Olson's examination, document that plaintiff walked with normal gait. (Tr. 228-29, 262, 264, 267, 332-33, 362.) Further, during the hearing, plaintiff explained that he used a cane after the car accident but "I loaned it to somebody that got injured, and I never got it back." (Tr. 46.) Inconsistency with other medical evidence is a specific and legitimate rationale for discounting an examining physician's opinion, and here the ALJ's rationale was adequate.

Finally, plaintiff argues that the opinions of the non-examining State Agency consultants do not constitute substantial evidence to reject Dr. Olson's examining opinion. Pl.'s Reply 3. Plaintiff's assertion does not fully articulate the relevant law. Rather, "[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non[-]examining, non[-]treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by *substantial record evidence*." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (citation omitted) (emphasis in original). Here, the ALJ did just that: he provided three separate specific and legitimate reasons for rejecting Dr. Olson's testimony, and as discussed, each was supported by substantial evidence. Thus, the ALJ did not err in rejecting Dr. Olson's opinion.

IV. Step Two Identification of Severe Impairments

Plaintiff contends that the ALJ erroneously failed to find certain impairments to be "severe" at step

two of the sequential evaluation process. Step two is the *de minimis* screening mechanism for disability claims. *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on and individual's ability to work." *Id.* at 686. Where an ALJ fails to identify a severe impairment at step two, but nonetheless proceeds with the sequential process, and at subsequent steps considers all of the claimant's severe and non-severe impairments, the error by omission is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff specifically argues that the ALJ failed to find the following medically-determinable impairments to be severe: right wrist history of carpal tunnel syndrome; right elbow epicondylitis secondary to overuse and overcompensation with associated pain; history of multiple surgeries of the right knee, resulting in inflammation and pain with likely osteoarthritis; and diabetes. Pl.'s Br. 3. Plaintiff's contention is unavailing, for the reasons described below.

At the administrative hearing, the ALJ asked plaintiff about his carpal tunnel syndrome. Plaintiff testified that he continued working while he had carpal tunnel, and further testified that he was able to lift a gallon of milk with the right hand despite the condition. Tr. 39-40. Moreover, although plaintiff presumably relies on Dr. Olson's diagnosis of "right wrist history of carpal tunnel," she reported "he no longer has the pain that he had in his right wrist." (Tr. 307-08.) Additionally, both tests for carpal tunnel were negative on examination. (Tr. 310.) Dr. Olson concluded that the condition had "resolved." (Tr. 311.) Finally, there is no evidence that plaintiff's history of carpal tunnel syndrome results in any limitation greater than that set forth in the RFC, and plaintiff does not allege any such impairment. Accordingly, any error in omitting the condition from the list of severe impairments at step two was harmless. *Lewis*, 498

F.3d at 911.

In regards to impairment arising from a history of right knee surgeries, plaintiff again cites Dr. Olson's report, which noted: "Right knee pain secondary to history of surgery and subsequent osteoarthritis most likely. An x-ray of the right knee would be helpful." Pl.'s Reply 4; (Tr. 311). As discussed above, one of plaintiff's primary contentions is that the ALJ should have adopted Dr. Olson's four-hour stand/walk capacity assessment rather than the six-hour capacity endorsed by the State Agency doctors. However, the ALJ provided legally adequate reasons to reject Dr. Olson's opinion. *See supra.* Furthermore, although the ALJ did not find any knee condition at step two, the ALJ appeared to consider it in formulating the RFC. *See* (Tr. 21 (adopting all of Dr. Olson's postural limitations aside from the four-hour stand/walk limitation), 22 (discussing 2013 x-rays of plaintiff's right knee), 24 (noting Dr. Olson found normal strength and sensation on examination, and contrasting Dr. Olson's observations with "past exams where he displayed a normal gait)). Thus, any error in failing to find the knee condition was a severe impairment at step two was harmless. *Lewis*, 498 F.3d at 911.

Plaintiff additionally maintains the ALJ erred by declining to find diabetes a severe impairment at step two. However, even assuming the ALJ erred in not finding diabetes was severe at step two, the ALJ considered the impairment at subsequent steps of the sequential evaluations. Specifically, the ALJ noted that plaintiff was hospitalized with high glucose in 2010, but subsequently began insulin treatment and lost weight. Tr. 22. While the ALJ also noted that plaintiff's diabetes was "not at target" in 2011, plaintiff testified at the hearing that his diabetes was well-controlled. Tr. 22, 43-44. Thus, because impairments that can be controlled effectively are not disabling, plaintiff has not demonstrated that any step two error was harmful. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006). Moreover, plaintiff has not alleged why the omission was harmful. *Lewis*, 498 F.3d at 911.

V. Step Five Analysis

Plaintiff argues the ALJ erred in identifying other work in the national economy which plaintiff could perform based on his assessed RFC. Specifically, plaintiff argues the ALJ erred by posing hypothetical questions to the RFC that did not include the stand/walk limitation opined by Dr. Olson, or limitations set forth in the evidence submitted to the Appeals Council but not made part of the record. However, because the ALJ did not err in discounting Dr. Olson's opinion, and because the other evidence is not part of the administrative record in this matter and therefore not properly before this court, plaintiff's contentions are unavailing for the reasons described herein. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting step five assignment of error which essentially rehashed previous arguments).

Plaintiff additionally argues that the ALJ failed to consider Medical-Vocational Rule 202.02 for an individual of advanced age because the hearing date was less than two months prior to his 55th birthday, and which would have resulted in a finding of disabled. Pl.'s Br. 17, Pl.'s Reply 7-8; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2. The Medical-Vocational Guidelines ("the Grids") are another way, as an alternative to VE testimony, that the Commissioner can meet his burden of showing that claimant can perform other work in the national economy. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Grids "reflect the analysis of the various vocational factors (*i.e.*, age, education, and work experience) in combination with the individual's [RFC]." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). Plaintiff argues that the ALJ committed reversible error by "failing to explain whether [plaintiff's] borderline age situation was considered and which factors were weighed." Pl.'s Br. 17.

In support, plaintiff cites the Hearings, Appeals, and Litigation Manual ("HALLEX"), an internal

Social Security Administration policy manual:

> SSA will not apply the age categories mechanically in a borderline age situation. If a claimant is within a few days to a few months of reaching an older age category .., and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case .... The ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered.

HALLEX I-2-2-42. However, the facts in this case are analogous to those in *Lockwood*, which declined to find reversible error although Lockwood was one month and three days from becoming "a person of advanced age" under the Grids. *Lockwood*, 616 F.3d at 1069-70. There, the Ninth Circuit held that the HALLEX did not "impose judicially enforceable duties on either the ALJ or this court." *Id.* at 1072. Further, the *Lockwood* court determined that so long as the ALJ "considers" whether to use an older age category, the ALJ does not run afoul of the HALLEX guidance at issue. *Id.*

Accordingly, the Commissioner argues that plaintiff was not as close to the next age category as the claimant in *Lockwood*. Def.'s Br. 19. Further, the Commissioner argues that, like the ALJ in *Lockwood*, the ALJ properly considered using an older age category by identifying plaintiff's birth date and his age at the alleged onset date. *Id.*; *see Lockwood*, 616 F.3d at 1071-72. Indeed, here the ALJ identified plaintiff's birth date and his age at the alleged onset date. (Tr. 26.) Additionally, the ALJ explicitly considered whether plaintiff was disabled under both Grid Rule 202.18 (younger individual) and Grid Rule 202.11 (closely approaching advanced age). *See* (Tr. 27); *Lockwood*, 616 F.3d at 1071-72. Therefore, pursuant to the precedent set forth in *Lockwood*, the ALJ in the instant case satisfied the requirement of considering the next age category. *Id.*; *see* 20 C.F.R. § 404.1563(b) ("we will consider

whether to use the older age category").

In his opening brief plaintiff does not attempt to distinguish his case from that in *Lockwood*, nor does plaintiff substantively respond to the Commissioner's argument in his reply brief. *See* Pl.'s Br. 16-17; Pl.'s Reply 8. Rather, plaintiff merely maintains that the Commissioner is "incorrect," but neglects to address the relevant, precedential case law. Pl.'s Reply 8. Plaintiff's approach is unpersuasive. Here, the record reflects that the ALJ adequately considered plaintiff's age at step five – and did not mechanically apply the age categories – by relying on VE testimony instead. (Tr. 59-62.) The ALJ did not, therefore, err. *Lockwood*, 616 F.3d at 1071-72, 1074.

## *Conclusion*

For the reasons stated above, the ALJ's decision was based on substantial evidence and free of harmful legal error. Therefore, the Commissioner's decision is AFFIRMED and this case is hereby DISMISSED.

IT IS SO ORDERED.

DATED this 8th of January 2018.

JOHN V. ACOSTA
United States Magistrate Judge